U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-03988

ORDER FINDING A PRESUMPTION OF ABUSE UNDER 707(b)

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**02/26/2007**



US Bankruptcy Court Judge
District of South Carolina

Entered: 02/28/2007

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 06-03988-DD |
| James B. Ray and Annie M. Ray, | Chapter 7 |
| Debtor(s). | **ORDER FINDING A PRESUMPTION OF ABUSE UNDER 707(b)** |

THIS MATTER is before the Court on the United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1)[1] Based on Presumption of Abuse ("Motion"). A hearing was held in this matter January 16, 2007. James B. Ray and Annie M. Ray ("Debtors") and the UST appeared, by and through counsel, to argue the Motion.

The UST's Motion asserts that certain line item deductions made by these above median income Debtors on Form B22A ("Means Test") are either inaccurate or are ones to which Debtors are not entitled, and that adjustment is needed to accurately reflect Debtors' monthly disposable income.[2] Specifically, the UST asserts (1) that Debtors are not entitled to deduct $332 for ownership expense on their second automobile because Debtors own the car free from any lien, (2) that Debtors are not allowed to deduct secured payments for collateral that Debtors intend to surrender (i.e., (a) 2005 Honda VT750 motorcycle $98.36 per month and (b) 2004 Coachman 24 camper $140.00 per month), (3) that the $1,774.47 for taxes is not accurate and that $1,683.63, the amount reported on schedule I, should be allowed for taxes, and (4) that the administrative

---

[1] Unless otherwise indicated, further code section references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*

[2] Debtors' Form B22A reports a current monthly income of $6,824.94. At the hearing Debtors testified that the amount was overstated by $40.00 because certain rent payments had not actually been received. Therefore, for all calculations the Court will use $6,784.94 as Debtors' current monthly income. The median annual income for a family of two in the District of South Carolina is $44,730.00.

expense deduction of $172.78 is too much because the Debtors included postpetition regular monthly mortgage payments in their calculation of the hypothetical chapter 13 plan payment that gives rise to this expense and the correct amount should be $112.68.

At the hearing Debtors agreed to the UST's position on the ownership expense deduction (however, the UST would permit an additional $200 vehicle operation expense).[3] This increases the deduction on line 22 from $343 to $543 and decreases the amount of the deduction on line 24 from $332 to $0 for a net decrease in the allowable deduction on form B22A of $132. Second, the Debtors concede that the amount deducted for taxes on schedule I is appropriate for inclusion on line 25 of form B22A. Using the $1,683.63 figure on line 25 instead of $1,774.47 produces a decrease of $90.84.

Thus, the issues before the Court are (1) whether a debtor in a chapter 7 case is allowed to take expense deductions for payments on secured debt when the debtor states an intent to surrender the collateral, (2) whether a debtor is allowed to include mortgage payments in the calculation to determine the amount of the administrative expense deduction on line 45, and (3) whether Debtors' filing is an abuse under chapter 7.

### *Presumption of Abuse Under § 707(b)*

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by an individual whose debts are primarily consumer debts or, with the debtor's consent, convert the chapter 7 case to a chapter 11 or 13, if the Court finds that granting relief would be an abuse of the provisions of chapter 7. Section 707(b)(2)(A)(i) gives rise to a presumption that the debtors' chapter 7 filing is an abuse if the debtors' current monthly income reduced by amounts determined under clauses § 707(b)(2)(A)(ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –

---

[3] The UST included the $200 vehicle operation expense in his proposed form B22A filed as an exhibit with the Motion.

2

  (I) 25 percent of the debtors' nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

 (II) $10,000.

More simply stated, if, after all appropriate deductions from the debtors' current monthly income, the debtors have less than $100 per month in monthly net income (*i.e.*, less than $6,000 to fund a 60-month plan), the filing is not presumed abusive. If the debtors have monthly net income of $166.67 or more (i.e., at least $10,000 to fund a 60-month plan), the filing is presumed abusive. Finally, if the debtors' monthly income is more than $100 but less than $166.67, the case will be presumed abusive if the income, when multiplied by 60, will pay 25% or more of the debtors' non-priority unsecured debts.

 If a presumption of abuse arises, the debtors may rebut it only by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, and then only to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. § 707(b)(2)(B)(i). The debtors must provide a detailed explanation of the special circumstances, itemize and document each additional expense or adjustment of income, and attest under oath to the accuracy of the information provided. § 707(b)(2)(B)(ii) and (iii). In the event the debtors establish special circumstances of the kind described in § 707(b)(2)(B)(i), the debtors will rebut the presumption of abuse only if they demonstrate that the additional expenses or adjustments to income cause the product of the debtors' reduced monthly income, when multiplied by 60, to be the lesser of (1) 25% of the debtors' nonpriority unsecured debts or $6,000, whichever is greater, or (2) $10,000. § 707(b)(2)(B)(iv).

*Discussion*

Debtors are husband and wife. Their debts consist primarily of consumer debts. Debtors' annualized current monthly income is $ 81,419.28.[4] The applicable median family income for a family of two in South Carolina is $ 44,730.00. Since the median family income is less that the Debtors' annualized current monthly income, Debtors completed Parts IV, V and VI of the B22A Form.

After adjusting lines 22, 24, and 25 as recommended by the UST and agreed upon by Debtors, Debtors have a monthly disposable income on line 50 of $105.14. Therefore if $105.14 multiplied by 60 will pay 25% or more of Debtors' unsecured nonpriority debt, the presumption of abuse applies. It does not. Debtors have $52,208.57 in unsecured non-priority debt; 25% would be $13,052.14. Debtors' monthly disposable income, at this point, multiplied by 60 is $6,308.40. Thus, no presumption of abuse arises unless one or both of the disputed expense items are denied.

A. *Effect of Debtors' Intent to Surrender Collateral*

The means test provides for deduction from monthly disposable income of "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." § 707(b)(2)(A)(iii)(I). The UST argues that this Court's holding in *In re Edmunds*, 350 B.R. 636 (Bankr. D. S.C. 2006), a chapter 13 case, controls. Since the holding in *Edmunds* rests on § 1325(b)(3), it is not applicable to this chapter 7 case. Thus we turn to § 707(b)(2) in the context of a chapter 7, without the gloss of "amounts reasonably necessary to be expended" found in chapter 13.

We begin, as we must, with the language of the statute. *Richardson v. United States*, 526 U.S. 813, 818 (1999)("When interpreting a statute, we look first to the

---

[4] This amount takes into account the $480 reduction in Debtor's Current Monthly Income as noted in *n.2*.

4

language."). The deduction is for "[t]he debtor's average monthly payments on account of secured debt . . .calculated as the sum of  - the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition. . . ."  § 707(b)(2)(A)(iii).  The statute is subject to more than one interpretation and its meaning is not plain.

The courts that have addressed the issue are split and in making their determination have focused on one phrase of the statute, "amounts scheduled as contractually due."  There are three lines of authority.  The first begins with *In re Walker 2006 Bankr. LEXIS 845, 2006 WL 1314125 (Bankr. D. Ga.)*("[T]he plain language of the statute permits a reduction from CMI for payments on secured debts that have not been reaffirmed. Congress' choice of the phrase, "scheduled as contractually due," suggests that, in determining which payments should be averaged for the deduction, the Court should determine how many payments are owed under the contract for each secured debt at the time of filing.").  *See also In re Randle*, 2006 Bankr. LEXIS 3519, 2006 WL 3734351 (Bkrtcy. D.Ill.)("The plain language of § 707(b)(2)(A)(iii) requires the debtor to deduct the amount due under her contracts for secured debt regardless of whether she intends to redeem, reaffirm or surrender the property."); In *re Simmons*, 2006 Bankr. LEXIS 3532, 2006 WL 3782959 (Bankr. D. Ohio)("Because a debtor's contractual liability is not eliminated upon the filing of a bankruptcy petition, Congress's use of the words "scheduled as contractually due" suggests that, for purposes of § 707(b)(2)(A)(iii)(I), a debtor may deduct from his "current monthly income" the total of all payments that are, as of the time of the filing, due in each of the 60 months following the petition date on any secured debt that is rightfully listed on Schedule D regardless of whether debtor will remain liable on such debt in the future."); and *In re Sorrell*, 2007

5

WL 211276 (Bankr. S.D. Ohio).  These cases reason that the plain language "scheduled as contractually due" of §707(b)(2)(iii)(I), allows (or "requires" if one prefers) a debtor to deduct all payments due under contract on secured debts as of the date the petition is filed.  These cases treat the petition date as the relevant "snapshot" for the determination of deductible secured payments on the means test form, regardless of the intent of the debtor with respect to the collateral.  A problem with these cases is that they come to the same conclusion about the meaning of the statute as would result if the words "scheduled as" were not present but do so by focusing on those very words.[5]

The second line of cases holds that,

> [T]he mere act of declaring an intent to surrender collateral on a Statement of Intention does not extinguish the Debtors' right to deduct those payments under § 707(b)(2)(A)(iii). However, for purposes of a motion to dismiss based on the presumption of abuse formula found in §707(b)(2)(A) (Presumption of Abuse Motion), the relevant date on which calculations should be based is the date of the filing of the motion, not the date of the filing of the petition. Therefore, any events occurring post-petition and up to the date of the filing of the motion must be taken into account in applying the means test. Thus, if a debtor has carried through with his intent to surrender the collateral and relief from stay has been granted before the filing of the Presumption of Abuse Motion, the payments on that debt would not be counted under § 707(b)(2)(A)(iii).

*In re Singletary*, 2006 Bankr. LEXIS 2884 at *2, 2006 WL 2987945 (Bankr. D. Tex.). *See also In re Zak*, 2007 Bankr. LEXIS 88, 2007 WL 143065 (Bankr. D. Ohio); and *In re Nockerts*, 2006 Bankr. LEXIS 3435, 2006 WL 3689465 (Bankr. D. Wis.).

These cases suggest that post-petition actions taken by the debtor or others can impact the meaning of "scheduled as contractually due."  The last line of authority states,

> Congress used the phrase "scheduled as" several times in the Bankruptcy Code to refer not to the common dictionary meaning for the word schedule (i.e., "to plan for a certain date"), but to whether a debt is identified on a debtor's bankruptcy schedules…. Nothing in 11 U.S.C. § 707(b)(2)(A)(iii) indicates an intent to assign a different meaning to the phrase "scheduled as" in this provision and to do so would run contrary to the statute. Accordingly, the Debtors' schedules and statements form the basis from

---

[5] That is, the courts construe the statute as providing for the calculation of "the total of all amounts contractually due. . . ."

6

> which the Court should determine whether a debt is "scheduled as contractually due." 11 U.S.C. § 521, in conjunction with Federal Rule of Bankruptcy Procedure 1007(b), requires debtors to file, *inter alia*, schedules and a statement of intent as prescribed on the appropriate official forms. Further, debtors have a duty to amend their schedules and statements "to keep the information in them current." To focus on the single term "contractually due" without due consideration of the import of the term "scheduled" and the phrase "in each of the 60 months following the date of the petition" will miss the actual meaning and the intent of § 707(b)(2). A primary intent of Congress in the passage of BAPCPA was to ensure that those debtors who can pay their debts do so.

*In re Skaggs*, 349 B.R. 594, 599 (Bankr. D. Mo. 2006)(Internal citations omitted). *See also In re Harris*, 353 B.R. 304 (Bankr. D. Okla. 2006)(Disagreeing with Walker and finding that the means test was designed to require that debtors who can pay do so).

A resort to the dictionary reflects that "schedule" has multiple meanings including "plan for a certain date" from *Walker,* "appended to a document" as in bankruptcy schedules from *Harri*s and several other definitions. The legislative history, such as it is, is of little help in that it largely repeats the statutory text. *See In re Sorrell*, 2007 WL 211276 (Slip op. 6)(Bankr. S.D. Ohio); *In re McNabb*, 326 B.R 785, 789 (Bankr. D. Ariz. 2005) ("Legislative history is virtually useless as an aid to understanding the language and intent of BAPCPA"). The meaning of "schedule" and "scheduled" elsewhere in the Bankruptcy Code is of little use as there are multiple meanings and the meaning is perhaps more apparent in the different context in which the words appear. *See In re Nockerts*, 2006 WL 3689465 Slip op. 3 (Bankr. D. Wisc.)(Citing to the use of the words in the Bankruptcy Code and finding the meaning readily apparent).

Other courts sometimes seek to uncover and apply some overarching legislative purpose when interpreting the 2005 amendments to the Bankruptcy Code. These courts arrive at conclusions as disparate as that Congress intended to deny bankruptcy relief to as many debtors as possible, deprive judges of discretion, and clean up a fraud riddled

7

system. Congressional intent is likely some molding of all these concepts, as would be expected when the political branch makes a major overhaul of existing law.

This leads us to where we began, to the statute itself. The deduction from income at issue is for "average monthly payments on account of secured debts" and is calculated according to a formula that looks to the "60 months following the date of the petition." "[T]he meaning of statutory language, plain or not, depends on context." *Holloway v. United States*, 526 U.S. 1, 7 (1999)(*citing Brown v. Gardner*, 513 U.S. 115, 118 (1994)) (*quoting King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991)). These two phrases are best construed as contemplating a forward-looking calculation. "Statutory language must be read in context and a phrase 'gathers meaning from the words around it.'" *Jones v. United States*, 527 U.S. 373, 389 (1999) (*quoting Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

It therefore seems that the better construction of "scheduled as contractually due" would consider the debtors' intention to surrender the collateral and make no future payments to the creditor. This construction would not support deduction of average secured credit payments on debt secured by collateral that the debtor proposes to surrender. This construction is also in keeping with the overall purpose of establishing a formula that will give rise to a meaningful presumption of abuse or not. In considering whether debtors are abusing chapter 7 it is proper to construe the statute in such a way as to determine whether they have an ability to repay their general unsecured creditors once they have carried out their stated intentions.

Some courts have criticized reliance on the statement of intention of debtors with respect to secured debt since the debtors can amend their statement. A debtor must file this statement, if the other schedules include debts that are secured by property of the

8

estate, within 30 days of the petition date or before the meeting of creditors, whichever is earlier. § 521(a)(2)(A). The debtor must then perform the intention within 30 days of the first date set for the meeting of creditors. § 521(a)(2)(B). These dates are subject to extension by the court. The automatic stay terminates and personal property is no longer property of the estate if the debtor fails to timely file the statement or take the action specified in the statement. § 362(h). If the security interest is a purchase money interest in personal property, the debtor may not retain possession of the property unless the stated intention to redeem or reaffirm is carried out within 45 days. §521(a)(6).

These limitations on a debtor's ability to deal with secured property, although subject to some extension by the court and to some rights by the trustee, do not open the door to unending equivocation on the part of the debtor. Rather, these provisions, added to the Code by amendment in 1984 and 2005, impose a duty to act promptly. Indeed, gamesmanship with the statement of intention could well impact the dismissal analysis under §707(b)(3) and certainly is not a sound basis for grounding an interpretation of the secured debt payment deduction in the means test.

The Debtors have stated their intention to surrender certain personal property, have not undertaken amendment to their statement, nor explained why they might. The Debtors thus are not entitled to deduct these "average monthly payments" from their current monthly income.

*B. Calculation of Administrative Expenses*

The remaining issue is whether a debtor is allowed to include an amount for regular monthly mortgage payments in calculating a hypothetical chapter 13 plan payment to determine the administrative expense deduction on line 45 of Form B22A in a

9

district in which postpetition mortgage payments are paid outside of the plan. This Court has found no case law on point. This is an issue of first impression.

Administrative expense multipliers ("AEM")[6] for all districts[7] are determined by the Executive Office for United States Trustees. On the petition date for this case the AEM for the District of South Carolina was 7.7%.[8] The AEM for a district is the average percentage fee charged by the chapter 13 trustees for a district during the preceding year. It is customary in this District that postpetition monthly mortgage payments are paid to the lender by the debtor and not through the trustee. Whether postpetition mortgage payments are included in the plan or paid directly by the debtor will impact the percentage fee. The percentage fee is set by the Attorney General and compensates the trustee and covers expenses of case administration. 28 U.S.C. § 586(e)(2)(B). Since the percentage fee takes into account the disbursements of trustees, including the fact that regular monthly mortgage payments are paid outside the plan, a debtor should not include these payments in the calculation of administrative expenses on line 45.

## *Conclusion*

Debtors are not entitled to deduct payments for the 2005 Honda VT750 motorcycle in the amount of $98.36 nor payments for the 2004 Coachman camper in the amount of $140.00 on line 42 of their form B22A. This would increase the $105.14 figure to $343.50. Furthermore the Debtors are not entitled to include the payment of their regular monthly mortgage payments in their calculation of administrative expenses. This would reduce the amount on line 45(c) from 172.78 to $112.68, an overall addition to Debtors' monthly disposable income of $60.10. Therefore, Debtors' monthly

---

[6] This expense deduction finds its basis in § 707(b)(2)(A)(ii)(III).

[7] Excluding districts in Alabama and North Carolina, which are not under the jurisdiction of a United States Trustee.

[8] AEMs are adjusted from time to time. The AEM for the District of South Carolina as of January 31, 2007 was 5.9%. Updates can be obtained at http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm

10

disposable income on line 50 is $403.60. The presumption of abuse applies. Debtors have demonstrated no special circumstances that would rebut the presumption of abuse[9]. Having found abuse, the Court need not undertake an analysis under § 707(b)(3).

It is ORDERED that unless the Debtors voluntarily convert this case to a case under Chapter 11 or 13 of the Bankruptcy Code within ten (10) days from the entry date of this order, the UST's Motion to Dismiss will be granted and this Chapter 7 case will be dismissed pursuant to § 707(b) without further notice or hearing.

**AND IT IS SO ORDERED.**
Columbia, South Carolina
February 26, 2007

---

[9] The debtors case in rebuttal focused on matters the UST raised under § 707(b)(3).